1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  United States of America,                    No. CR-22-00388-001-PHX-DWL

10                     Plaintiff,               **ORDER**

11  v.

12  Jesus Vega Perez,

13                     Defendant.

14

15        Pending before the Court is Defendant's motion for new trial.  (Doc. 76.)  For the

16  following reasons, the motion is denied.

17                       **RELEVANT BACKGROUND**

18        On April 2, 2022, Defendant attempted to enter the United States from Mexico via

19  the San Luis Port of Entry while driving a 2018 BMW 530i.  (Doc. 1 at 3.)  During the

20  inspection process, "a total of thirty (30) packages were found concealed within the driver

21  and passenger side rear quarter panels, the floor of the trunk, and underneath the driver side

22  of the dashboard with a total aggregate weight of 15.58 kilograms."  (*Id.*)  The packages

23  contained a white crystalline substance that field-tested positive for methamphetamine.

24  (*Id.*)  During a post-arrest interview, Plaintiff made various admissions.  (*Id.* at 3-4.)

25        On April 26, 2022, Defendant was indicted on one count of possession with intent

26  to distribute methamphetamine and one count of importation.  (Doc. 10.)

27        Before trial, Plaintiff disclosed his intent to pursue a duress defense.  (Docs. 44, 56.)

28  The notice provided in relevant part as follows:

1
2
3
4
5
6
7
8
9
10
11
12

Prior to Mr. Vega's arrest, a man who Mr. Vega knows as "Carlos" came to Mr. Vega's residence in San Luis, Mexico while Mr. Vega, his wife, and 2 young daughters were home.  Carlos lived in Mr. Vega's neighborhood for many years.  Several men were with Carlos and were setting up weapons. Carlos told Mr. Vega he had to drive a car with some packages in it into the United States.  Mr. Vega refused.  Carlos pulled out a gun, pointed it at Mr. Vega, and said he would kill Mr. Vega if he did not do what he told him and he knows where Mr. Vega's family lives in San Luis, Mexico.  Carlos appeared to be under the influence of drugs.  Mr. Vega knew that Carlos worked for a man named Miguel who is in charge of narcotics in San Luis, Mexico.  Mr. Vega had many other family members living in San Luis, Mexico at the time including, but not limited to, his grandmother, grandfather, uncles, aunts, and cousins.  Mr. Vega feared for his life, the life of his wife, the lives of his 2 young daughters (who were in the house at the time), and the lives of his family, and under duress, coercion, or compulsion, did what Carlos instructed and ordered.  Mr. Vega had no reasonable opportunity to escape the threatened harm to him and his family in San Luis, Mexico.

13
14
15
16
17

(Doc. 56 at 2.)  In response, the government sought to preclude Defendant from pursuing this defense, arguing that his proffered facts failed to establish a prima facie case of duress under Ninth Circuit law.  (Doc. 53.)  After hearing argument during the pretrial conference, the Court denied the government's request and clarified that Defendant would be allowed to pursue a duress defense.  (Doc. 57.)

18
19
20

The trial took place on January 17-19, 2023.  (Docs. 58, 59, 60.)  Defendant chose to testify and made statements consistent with the theory of duress set forth in his pretrial notices.

21
22
23
24
25
26

At the outset of closing argument, the government noted that "much of what this case really comes down to is whether the defendant was acting under duress when he transported methamphetamine into the United States."  (Doc. 77 at 3.)  The government then identified various reasons why the jury should not believe Defendant's duress-related testimony and why that testimony was not, in any event, sufficient to establish a duress defense:

27
28

The defendant told a story yesterday for the first time.  That story was very convenient.  That men showed up to his house in Mexico, pointed a gun at him and threatened him and his family.  He told this story after he had nine

months to think about what he had told agents in April of last year when he was interviewed. He told agents when he was interviewed that he knew that he was trafficking drugs. He said that he knew that there was a deal, and that if it was successful he might make a little money. That is what the defendant chose to do at that time, but he was caught. As a lawful permanent resident of the United States, the defendant, his parents, as well as his United States citizen girlfriend, his United States citizen child at that time, had every opportunity to enter and freely stay in the United States if he was really in that much danger in Mexico. And he had every opportunity to tell numerous officers that he interacted with at the port of entry that he was in any kind of danger. But he chose not to do so, just like he chose to drive drugs into the United States that night.

(*Id.* at 3-4.) Later, near the end of closing argument, the government again identified reasons why the jury should not believe Defendant's duress-related testimony and why that testimony was not, in any event, sufficient to establish a duress defense:

> *The defendant is arguing that he acted out of duress that night. That is for you to decide. I would say to you first that the story that he told yesterday is not believable.* The fact that armed men showed up at his house, pulled out a gun and threatened him and his family if he didn't drive his mom's BMW across the border is a very convenient story to explain what he did that day. It is different from what he told agents during his interview in April. He's had nine months to think about that story, to think about what he would testify in court, and what you heard yesterday was the result. Even if you believe that story though, it's still not sufficient to prove that he acted under duress based on the legal elements. And in particular, the third element is that the defendant had no reasonable opportunity to escape the threatened harm. The defendant arrived to the port of entry. He chose not to tell anyone that he was in any sort of danger. You've heard *ad nauseam* that there were many officers he could have told if he had any indication that he was in danger once he was within the safety of the United States, and he chose not to do that. He also, as I've noted, is a lawful permanent resident of the United States. His girlfriend is a citizen. His parents are lawful permanent residents. And his child is a United States citizen. If they were really in so much danger, they had every opportunity to come into the United States, especially given that the defendant worked in the United States. There's no reason that he would have had to stay in Mexico and face this danger if he was really in so much danger. The defendant has not demonstrated that he was acting in duress when he transported drugs across the border.

(*Id.* at 12-13, emphasis added.)

Defense counsel did not raise any objections during the government's closing argument. However, during a sidebar after the government finished its argument (which the Court had called purely for scheduling reasons), defense counsel made the following statement: "During counsel's closing argument I heard her say, or I thought I heard her say, I would say that Mr. Vega's duress claims are not believable. So to me that's vouching, if I heard her correctly. I didn't want to interrupt at the time. But to me that's vouching. I'm very concerned that now my client may not get a fair trial because she essentially was vouching. Probably not intentionally. But that's what I heard. So I'd like to move for a mistrial at this time." (*Id.* at 14.) In response, the Court asked if counsel was seeking "any other relief . . . other than a mistrial." (*Id.*) Defense counsel replied: "At this time, no." (*Id.*) The Court then denied the mistrial request on the grounds that "[i]t didn't seem close to vouching to me" and "[t]here hasn't been a request for any sort of instruction or anything like that." (*Id.* at 14-15.)

The jury deliberated for, at most, an hour before returning a guilty verdict on all counts. (Doc. 60.)[1]

On February 2, 2023, Defendant filed the pending motion for new trial. (Doc. 76.)

On February 16, 2023, the government filed a response. (Doc. 79.)

Defendant did not file a reply and neither side requested oral argument.

**DISCUSSION**

I.    Legal Standard

Rule 33(a) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."

In general, a motion for a new trial under Rule 33 "should be granted only in

---

[1]    The minute entry from January 19, 2023 reflects that the jury was excused from the courtroom to begin its deliberations at 2:12 p.m. and that counsel reconvened in the courtroom at 3:48 p.m. to hear the verdict. (Doc. 60.) The Court's recollection is that it took at least 30 minutes, after the bailiffs received word that a verdict had been reached, for the courtroom deputy to contact counsel and for counsel to return to the courtroom. Thus, the deliberations themselves (which presumably included some time at the beginning to pick a foreperson) lasted an hour at most.

exceptional cases in which the evidence preponderates highly against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981) (citation and quotation marks omitted).  The Ninth Circuit has further clarified that where, as here, a new trial is sought based on allegations of improper vouching, "[w]e grant a new trial . . . only where, considered in the context of the entire trial, the prosecutor's conduct seems likely to have affected the jury's discharge of its duty to judge the evidence fairly."  *United States v. Sanchez*, 944 F.2d 497, 499 (9th Cir. 1991).  *See also United States v. Prantil*, 764 F.2d 548, 556 (9th Cir. 1985) ("We review the entirety of the prosecutor's remarks under the harmless error rule . . . to determine whether it is more probable than not that the improper remarks materially affected the verdict.").

II.     The Parties' Arguments

Defendant argues that "[t]he statement of the prosecutor that 'I would say to you first that the story that he told yesterday . . . is not believable' is vouching.  It used the power and prestige of U.S. Attorney's Office to say that the Defendant's testimony that he was under duress should not be believed because the prosecutor does not believe it." (Doc. 76 at 2.)  Defendant further argues, without elaboration, that "[n]o curative instruction could fix the problem."  (*Id.*)

The government opposes Defendant's motion.  (Doc. 79.)  The government argues that "the referenced statement was not vouching" (*id.* at 2-4) and that a new trial is not warranted in any case because "[t]he overwhelming evidence presented at trial weighs in favor of the jury's verdict" and "any suggestion that the jury's verdict was actually affected by the statements at issue would be nothing more than pure speculation" (*id.* at 4).

III.    Analysis

Defendant is not entitled to a new trial.  First, and most important, there was no vouching.  It is permissible for a prosecutor to use closing argument as a vehicle for identifying reasons why the jury should not believe the defendant's testimony.  *See, e.g.*, *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991) ("[T]he prosecution must have reasonable latitude to fashion closing arguments.  Inherent in this latitude is the

freedom to argue reasonable inferences based on the evidence. . . .  [I]t was proper for the government to argue that the jury ought not to believe the appellant's version.") (citations omitted).  The Ninth Circuit has specifically noted the propriety of this approach in cases, such as this one, where the defendant takes the stand to raise a claim of duress.  *United States v. Birges*, 723 F.2d 666, 672 (9th Cir. 1984) ("The comments made by the prosecutor did not constitute misconduct.  It is neither unusual nor improper for a prosecutor to voice doubt about the veracity of a defendant who has taken the stand.  The prosecutor's interpretation of Birges' duress claim as a 'fabrication' is also well within the bounds of acceptable comment.").

Given these principles, there was nothing improper in the government's decision to use closing argument as an opportunity to explain to the jury why Defendant's duress-related testimony was unworthy of credence.  The Court also notes the government took a much lighter tone during closing argument in this case than is sometimes taken in this circumstance.  The prosecutor did not, for example, directly accuse Defendant of being a "liar," even though the Ninth Circuit has clarified that prosecutors may make such an accusation when the evidence warrants it.  *See, e.g.*, *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996) (holding that the prosecutor's closing argument was "within the boundaries of proper . . . summations" where the prosecutor "used terms or phrases such as 'con man,' 'charlatans,' 'trolling around for victims,' 'lie,' 'lies,' or 'lied' over 90 times"); *Molina*, 934 F.2d at 1445 ("In a case that essentially reduces to which of two conflicting stories is true, it may be reasonable to infer, and hence to argue, that one of the two sides is lying.").  Instead, the government simply urged the jury to find that Defendant's testimony was "very convenient" and "not believable."  (Doc. 77 at 3, 12.)

Nor did the government's permissible line of closing argument transform into impermissible vouching when the prosecutor used the words "I would say to you first that" before identifying the reasons why the jury should view Defendant's testimony as unworthy of belief.  Had the prosecutor told the jury that she personally believed Defendant's testimony was unbelievable and urged the jury to reach the same conclusion,

the analysis would be different. *United States v. Weatherspoon*, 410 F.3d 1142, 1147 (9th Cir. 2005) (holding that prosecutor engaged in vouching by arguing that "[Taylor's] statement about being threatened I don't believe is truthful, ladies and gentlemen" and explaining that "[v]ouching of that sort is dangerous precisely because a jury may be inclined to give weight to the prosecutor's opinion in assessing the credibility of witnesses, instead of making the independent judgment of credibility to which the defendant is entitled") (citations and quotation marks omitted); *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992) (holding that prosecutor engaged in vouching by making such arguments as "I think he (Jim Ludden) was very candid," "I think he (Al Butler) was candid," and "I think he was honest" and emphasizing that "[a] prosecutor has no business telling the jury his individual impressions of the evidence"). *See generally United States v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980) ("[V]ouching involves personal assurances of a witness's veracity . . . ."). But here, the prosecutor simply used a neutral prefatory phrase ("I would say to you first that") before identifying the evidence-based considerations the jury should take into account when making its own credibility assessment ("That is for you to decide"). The challenged verbiage "I would say to you first that" is similar to the prefatory phrase "I submit that," which is not vouching. *Witherspoon*, 410 F.3d at 1147 n.3 ("In drawing the line between acceptable statements grounded on inferences from the evidence and unacceptable statements representing an improper suggestion of personal opinion, we have been especially sensitive to the form of prosecutorial statements—so that use of the prefatory phrase 'I submit' has been preferred to the use of 'I think' . . . ."); *United States v. Necoechea*, 986 F.2d 1273, 1279 (9th Cir. 1993) ("[T]he prosecutor stated: 'Why, ladies and gentlemen, if [Gibson's] lying, isn't she doing a better job of it?  I submit to you, ladies and gentlemen, that she's not lying.  I submit to you that she's telling the truth' . . . .  These 'I submit' statements do not constitute vouching. . . .  These statements do not imply that the government is assuring Gibson's veracity, and do not reflect the prosecutor's personal belief."). *See also United States v. Kojoyan*, 8 F.3d 1315, 1321 (9th Cir. 1993) ("The introductory phrase 'I submit' was an

important flag in alerting the jurors that defense counsel was not stating a fact, but asking them to use their common sense in drawing an inference.").

Finally, even though further analysis is unnecessary because there was no vouching, Defendant would not be entitled to a new trial even if his characterization of the challenged statement were correct. Defendant did not make a contemporaneous objection at the time the statement was made or ask for a curative instruction in the course of raising a belated objection and the Court is confident that the statement did not affect the jury's discharge of its duty to judge the evidence fairly or otherwise materially affect the verdict—the evidence against Defendant was strong (as evidenced by the quick verdict), Defendant's duress-related testimony was not very believable, and the challenged statement was one isolated phrase in a closing argument that was respectful in tone and not overreaching in any regard. *Cf. United States v. Flores*, 802 F.3d 1028, 1040 (9th Cir. 1040 (9th Cir. 2015) (vouching deemed harmless where it "involved a single improper statement").

Accordingly,

**IT IS ORDERED** that Defendant's motion for new trial (Doc. 76) is **denied**.

Dated this 9th day of March, 2023.

_____

Dominic W. Lanza
United States District Judge

- 8 -